O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-10638 DMG (AGRx)** | Date | May 14, 2013 |
|---|---|---|---|

| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 1 of 8 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS [DOC. # 35]**

On October 12, 2012, Plaintiff Global Hunter Securities ("GHS"), LLC, filed a complaint against Defendant Mannkind Corporation ("MannKind") for breach of contract. [Doc. # 1.] On February 1, 2013, MannKind filed a motion to dismiss. [Doc. # 35.] On May 1, 2013, the Court took the matter under submission because it was deemed suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. After thorough consideration of all the arguments, and for the reasons discussed below, MannKind's motion to dismiss is **DENIED**.

**I.
FACTUAL BACKGROUND**

On September 6, 2011, GHS and MannKind entered into an agreement, memorialized in a letter of the same date ("Engagement Letter"). (Decl. of Koji F. Fukumara ("Fukumara Decl.") ¶ 2, Ex. A)[Doc. # 35-2.] The parties agreed that GHS would act "as [MannKind's] exclusive advisor and placement agent in connection with the placement and/or establishment . . . of [MannKind's] debt securities." (Engagement Letter at 1.) On December 2, 2011, after GHS was unable to broker a deal that satisfied MannKind, the parties agreed to terminate their relationship in order to allow MannKind to seek a better deal with Jefferies & Company, Inc. ("Jefferies") as its agent. (Compl. ¶¶ 8-10; Fukumara Decl. ¶ 3, Ex. B ("Termination Agreement").)

Jefferies was also unable to find a satisfactory deal to place MannKind's debt securities. (Compl. ¶ 16.) On February 8, 2012, MannKind announced completion of a public offering of its common stock (*Id.* ¶¶ 14, 16; Fukumara Decl, Ex. C.) Jefferies was one of three banks that served as underwriters for the public offering, in which JMP Securities, LLC acted as co-manager. (Fukumara Decl., Ex. C.) The public offering amounted to $86.3 million in sales of stock. (*Id.*) GHS was not involved in the public offering.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-10638 DMG (AGRx)** | Date | May 14, 2013 |
|---|---|---|---|

| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 2 of 8 |
|---|---|---|---|

The relevant portions of the Termination Agreement are as follows. The Termination Agreement opens by reference to the Engagement Letter:

> Reference is made to that certain engagement letter, dated as of September 6, 2011.

(Termination Letter at 1.) The parties agreed to terminate the Engagement Letter

> if, but only if, MannKind successfully completes a transaction with Jefferies (in which GHS is named as a Co-Manager) not later than February 28, 2012.

(*Id.* ¶ 1.) The central provision at issue is the provision requiring Mannkind to pay GHS advisory fees in the event of a "placement of securities" with Jefferies:

> MannKind agrees that if it successfully completes a placement of securities with Jefferies, it will pay, or cause to be paid from the proceeds of such placement, a cash advisory fee to GHS in the amount of $875,000. In addition, (i) if the debt portion (or units of debt with warrants) of such placement results in proceeds to MannKind (net of any proceeds used to repay existing debt of MannKind) of less than $150,000,000, MannKind will pay, or cause to be paid from the proceeds of such placement, an additional cash advisory fee to GHS in the amount of $1,062,500, and (ii) if, in connection with such placement, MannKind issues to the investors therein warrants to purchase Mann Kind common stock in a ratio that exceeds one warrant for a share of common stock for each $10 of gross proceeds raised in such offering, MannKind will pay, or cause to be paid from the proceeds of such placement, an additional cash advisory fee to GHS in the amount of $1,062,500.

(*Id.* ¶ 3.) The parties agreed that these advisory fees would be the only compensation GHS could claim from MannKind. (*Id.* ¶¶ 2, 4.)

The Engagement Letter contains, in relevant part, definitions of "the Placement" and "the Instruments": "[MannKind has chosen to engage [GHS] as its exclusive advisor and placement agent in connection with the placement and/or establishment (the "***Placement***") of the Company's debt securities, which may include shares of the [MannKind's] non-convertible preferred stock (collectively, the '***Instruments***")." (Engagement Letter at 1 (emphasis in original).) The Engagement Letter discusses only MannKind's debt, and makes no mention of other securities.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-10638 DMG (AGRx)** | Date | May 14, 2013 |
| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 3 of 8 |

Both the Engagement Letter and Termination Agreement provide that New York law will govern the contracts. (Engagement Letter ¶ 10; Termination Agreement ¶ 5.) The Termination Agreement contains neither an integration clause nor a clause incorporating the Engagement Letter.

## II.
## LEGAL STANADARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Although a complaint need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Under Rule 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. Legal conclusions, in contrast, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555).

On a motion to dismiss, a court can consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The court is not required to accept as true allegations that contradict documents that are attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

//
//
//

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-10638 DMG (AGRx)** | Date | May 14, 2013 |
| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 4 of 8 |

## III.
## DISCUSSION

MannKind seeks to dismiss GHS's complaint solely on the ground that the contract language is unambiguous and precludes liability. MannKind makes essentially three arguments: (1) the "whole" contract – meaning the Engagement Letter and Termination Agreement – must be read together such that the trigger phrase "placement of securities" can only mean "debt securities" rather than a combination of debt and equity; (2) the parenthetical phrase "in which GHS is named as a Co-Manager" sets a condition precedent in the Termination Agreement, which did not occur, thus no obligations under the Termination Agreement were triggered; and (3) the term "placement" is a term of art in the securities field, which does not include public stock offerings.

The Court does not read the Termination Agreement to unambiguously support any of these arguments.

Under New York law, "written agreements are construed in accordance with the parties' intent and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing.'" *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430 (N.Y. 2013) (citing *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (N.Y. 2002). Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 98 N.Y.2d at 569. Language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person . . . who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396-97 (2d Cir. 2009)(internal citations omitted); *accord Uribe v. Merchants Bank of N.Y.*, 91 N.Y.2d 336, 341, 693 N.E.2d 740, 670 N.Y.S.2d 393 (N.Y. 1998) (A contract's terms should be interpreted according to "reasonable expectation and purpose of the ordinary business[person] when making an ordinary business contract.") "[W]here the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered, and in the context of a motion to dismiss, if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) (internal citations omitted).

**A.**     **The Word "Securities" Does Not Unambiguously Apply Only to Debt Securities**

MannKind's primary argument requires that the Court read the agreement "as a whole," by which MannKind means the Termination Agreement in conjunction with the Engagement

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-10638 DMG (AGRx)** | Date | May 14, 2013 |
|---|---|---|---|

| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 5 of 8 |
|---|---|---|---|

Letter. The complaint, however, merely refers to the Termination Agreement and GHS seeks damages for a violation of its terms. Therefore, before the Court can proceed to evaluate the contract "as a whole," it must determine whether the Engagement Letter is incorporated by reference into the Termination Agreement.

For a document to be incorporated by reference, the document in question must be identified in the contract "'beyond all reasonable doubt.'" *Kenner v. Avis Rent A Car Sys., Inc.*, 254 A.D.2d 704, 678 N.Y.S.2d 213, 214 (1998) (quoting *Matter of Board of Commrs.*, 52 N.Y. 131, 134)). Once the document is identified, whether it is incorporated by reference must be determined by the clear intent of the parties and the plain language of the agreement. *See Spiegler v. Gerken Bldg. Corp.*, 35 A.D.3d 715, 717, 826 N.Y.S.2d 674, 676 (N.Y. App. Div. 2006) (treating parties' intent to incorporate by reference as the determining factor).

The Termination Agreement does not include an unambiguous incorporation clause. The language referring to the Engagement Letter is: "Reference is made to that certain engagement letter, dated as of September 6, 2011." Because the Termination Agreement by its nature must refer to another contract that is being terminated, this clause simply identifies the subject of the agreement, and does not incorporate its terms. The Termination Letter explicitly states that "no provisions" of the letter "shall survive" if the terms of the Termination Letter come to pass, except for specified provisions. (Termination Letter ¶ 1.) While a termination agreement can be plausibly read to assume the terms of the previous agreement as a baseline, this clause was phrased so as to supersede the entire engagement letter, except for a few specified clauses. If the parties intended to incorporate the earlier agreement, its terms would likely not have been overwritten wholesale, save for a few clauses. Such an approach does not lend itself to a finding that the Termination Agreement unambiguously incorporates the Engagement Letter. Therefore, the Court must consider the Termination Agreement by its terms alone.[1]

Contrary to MannKind's argument, the word "securities" cannot unambiguously be read solely to mean "debt securities." As MannKind explains, there are, broadly speaking, two types of securities: debt and equity. Yet this point undermines MannKind's position. In plain language, the natural reading of the word "securities," unaccompanied by a type, must encompass both. Additionally, the same paragraph that contains the phrase "placement of securities" refers later to the "debt portion of such placement." Reference to the "debt portion" implies that "securities" contemplates a non-debt portion as well. To the extent possible, "every phrase and word in a contract must be given meaning." *Sassi-Lehner v. Charlton Tenants Corp.*,

---

[1] MannKind argues that the definitions of the words "Placement" and "Instruments" in the Engagement Letter require the Court to find in its favor. Because the Court does not find the Engagement Letter's terms unambiguously incorporated, the definitions do not apply, and thus cannot be construed in MannKind's favor.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 12-10638 DMG (AGRx) | Date | May 14, 2013 |
|---|---|---|---|

| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 6 of 8 |
|---|---|---|---|

55 A.D.3d 74, 80, 863 N.Y.S.2d 20, 25 (N.Y. App. Div. 2008). To find that the word "securities" only refers to debt securities would be to render the words "debt portion" surplusage, and the Court may not do so when another interpretation is available.

The larger context of the Termination Agreement supports the inference that the parties considered more than debt securities. The clause that includes the phrase "debt portion" contains the only instance of the word "debt" in the entire Termination Agreement. If the Termination Agreement were only about debt securities, debt could have been mentioned in clauses that did not merely refer to a "portion" of the new placement. The Termination Agreement is triggered if "MannKind successfully completes a *transaction* with Jefferies." (Termination Agreement ¶ 1 (emphasis added).) The word "transaction" is far broader than a termination triggered by only a "placement of debt securities."

The Termination Agreement describes the Engagement Letter as MannKind hiring GHS as agent "in connection with a placement of certain of MannKind's securities," and states that going forward Jefferies will act as advisor for "placement of *such* securities." (*Id.* at 1 (emphasis added).) Because the Engagement Letter dealt only with debt securities, MannKind argues that "such securities" must be a limiting statement. Yet this phrase is also ambiguous. It could mean what MannKind claims, or it could be merely descriptive in nature, not limiting the scope of the Termination Agreement, but stating the general purpose for it. As GHS points out, this is a precatory statement. While it must be given full effect as a provision of the contract, its placement within the contract renders it ambiguous.

MannKind also argues that because the Engagement Letter only hired GHS to place debt securities, a reading that is broader makes no business sense for the Termination Agreement, so the parties could not have intended the contract to be read in such a way. It is plausible, however, that GHS would have demanded a higher payment if the trigger were limited to debt securities, but instead chose to allow a lower payment in exchange for a greater certainty. Without extrinsic evidence into the negotiations, this Court cannot make a judgment as to the parties' intent beyond the four corners of the contract.

The Court therefore finds that "securities" cannot unambiguously mean only "debt securities."

B.     The Purpose of the Phrase "In Which GHS Is Named Co-Manager" Is Unclear

The obligations of the Termination Agreement are triggered "if, but only if, MannKind successfully completes a transaction with Jefferies (*in which GHS is named as a Co-Manager*)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 12-10638 DMG (AGRx)** | Date | May 14, 2013 |
|---|---|---|---|

| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 7 of 8 |
|---|---|---|---|

not later than February 28, 2012." (Termination Agreement ¶ 1(emphasis added).) MannKind argues that "in which GHS is named a Co-Manager" is a condition precedent, which having not occurred, bars GHS's claim.

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *IDT Corp. v. Tyco Grp.*, 13 N.Y.3d 209, 214, 918 N.E.2d 913, 916 (N.Y. 2009). "It must clearly appear from the agreement itself that the parties intended a provision to operate as a condition precedent. If the language is in any way ambiguous, the law does not favor a construction which creates a condition precedent." *Ashkenazi v. Kent S. Associates, LLC*, 51 A.D.3d 611, 611-12, 857 N.Y.S.2d 693, 694 (N.Y. App. Div. 2008).

Here, the meaning of the phrase is entirely unclear. If the phrase were as important to the contract as a condition precedent would be, it is difficult to understand its parenthetical inclusion in the document. Yet no other meanings are obvious either. There is nothing whatsoever that is *unambiguous* about this phrase, as used in the Termination Agreement. As such, extrinsic evidence will be necessary to determine its meaning.

**C.** **The Word "Placement" Does Not Unambiguously Apply Only to Private Placement**

Citing investopedia.com, MannKind argues[2] that "placement" has a well-defined meaning in the securities industry, which does not include public stock offerings. According to MannKind, "[a] placement is '[t]he sale of securities to a small number of private investors instead of to the general investing public.'" (Reply at 4 (citing http://www.investopedia.com/terms/p/placement.asp).) GHS disputes that this definition is either correct or common, and argues that placement is as appropriate to use in a public offering as a private offering. GHS provides a competing definition from inverstorwords.com, which defines placement as the "the selling of new securities." Additionally, GHS argues that the phrases "private offering" and "private placement" are used interchangeably, implying that the modifier "private" is the operative word in both, and that the agent assisting in a "best-efforts public offering" is commonly known as a "placement agent."

In addition to the web definition, MannKind offers the parties' course of conduct and overall purpose in the agreements. While the parties' purpose and course of conduct are important to construing the meaning of the contract, they cannot be considered at the motion to dismiss stage. The Court cannot find, based on a single definition from investopedia.com, that

---

[2] MannKind first raised this argument in its Reply brief. Nonetheless, in the interest of efficiency, the Court considers this argument and has allowed GHS to file a sur-reply to address it. [Doc. # 46.]

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk ms |
|---|---|---|

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 12-10638 DMG (AGRx) | Date | May 14, 2013 |
|---|---|---|---|
| Title | *Global Hunter Securities, LLC v. MannKind Corp.* | Page | 8 of 8 |

"placement" unambiguously refers solely to private placement.  Based on the plain language at this stage of the proceedings, the word "placement" is not unambiguously restricted to private placements.

## IV.
## CONCLUSION

In light of the foregoing, MannKind's motion to dismiss is **DENIED**.  MannKind shall file an Answer within 21 days from the date of this Order.

**IT IS SO ORDERED**.